## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYSZARD WALCZAK, | ) | 3:22-CV-00927 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL ASSOCIATION OF | ) | |
| MACHINISTS AND AEROSPACE | ) | August 18, 2023 |
| WORKERS, CANEL LODGE 700 AND | ) | |
| PRATT AND WHITNEY, A DIVISION | ) | |
| OF RTX, | ) | |
| *Defendants*. | ) | |

### RULING AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Sarala V. Nagala, United States District Judge.

Self-represented Plaintiff Ryszard Walczak initiated the present action against his former employer, Defendant Pratt and Whitney ("Pratt") and his former union, Defendant International Association of Machinists and Aerospace Workers ("the Union" and together with Pratt, "Defendants"). He alleges that Defendants failed to pay him overtime, as required under the Fair Labor Standards Act ("FLSA") and Connecticut Minimum Wage Act ("CMWA"). He further alleges that Pratt breached its collective bargaining agreement and that the Union breached its duty of fair representation under Section 301 of the Labor Management Relation Act ("LMRA").

Defendants have moved to dismiss Plaintiff's claims. For reasons discussed herein, the Court GRANTS Defendants' motions to dismiss.

### I.      FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and assumed to be true for purposes of this decision. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff was employed by Pratt from February 4, 2008, until April 11, 2016, earning $40 per hour. Am. Compl., ECF No.

32 ¶ 5.  While employed by Pratt, Plaintiff was a dues-paying member in good standing of the Union.  *Id.* ¶¶ 6, 8.

Plaintiff worked as a Quality Inspector in the Quality Control Department at Pratt.  *Id.* ¶ 9. Prior to January of 2014, Plaintiff worked twelve-hour shifts on Friday, Saturday, and Sunday nights, totaling thirty-six working hours per week (the "AWW1 Shift").  *Id.* ¶¶ 9, 12.  Around and after January 2014, Pratt asked Plaintiff to change schedules from the AWW1 Shift to a shift consisting of five eight-and-a-half hour workdays per week, totaling forty working hours per week (the "First Shift").[1]  *Id.* ¶ 12.  Plaintiff alleges that he did not wish to change his shift but agreed to "help the company" after his boss requested several times that he change schedules.  *Id.*  Over the next two years, Plaintiff continued to work the First Shift, but asked several times to return to the AWW1 Shift.  *Id.* ¶ 13.  Pratt denied these requests, and Plaintiff accepted Pratt's decisions. *Id.*

In December 2015, a union steward, Erie Fordham, discovered that Plaintiff's shift never changed on the "seniority list," which appears to be a record of employee seniority and their shift assignments.  *Id.* ¶¶ 16–17.  Fordham explained that because the seniority list showed Plaintiff working the thirty-six hour AWW1 Shift, and not the forty-hour First Shift, Pratt should have paid Plaintiff overtime for the four-hour difference beyond the AWW1 Shift's thirty-six-hour schedule. *Id.* ¶¶ 19–20.  In January 2016, Plaintiff filed a grievance with Pratt within five working days of learning of his alleged eligibility for overtime payments.  Am. Compl. ¶ 21.  Although Plaintiff

---

[1] Despite the new schedule appearing to require forty-two-and-a-half-hour weeks, Plaintiff claims he worked forty-hour weeks.  *E.g.*, Am. Comp., ¶ 20.  Based on Plaintiff's allegations, and the apparent agreement between all parties as to the forty-hour work week, the Court will assume that Plaintiff worked forty-hour weeks.

does not so state, the grievance appears to have been filed under the grievance procedure outlined in the applicable collective bargaining agreement ("CBA").[2]

On April 11, 2016, Pratt terminated Plaintiff's employment after investigating his workplace behavior. *Id.* ¶ 23. In response, in May 2016, the Union filed a grievance on behalf of Plaintiff related to his termination. *Id.* ¶ 25. This grievance process proceeded to arbitration, according to the terms of the CBA. *Id.* ¶ 25. Plaintiff was dissatisfied with the procedures used during the arbitration because he was not permitted to hear or examine the testimony against him. Am. Compl. ¶¶ 25, 28. On January 26, 2017, the arbitrator decided against Plaintiff. *Id.* ¶ 27. Plaintiff claims the Union has "considerable discretion in controlling the grievance and arbitration procedure," and failed to properly represent him because he had previously reported to Human Resources that the Union stewards had harassed him. *Id.* ¶¶ 26, 28.

Separately, on September 5, 2017, Plaintiff asked the Union about the status of his pending overtime grievance, which he had filed in January 2016 prior to his termination. *Id.* ¶ 30. The Union informed Plaintiff that his overtime grievance was on the arbitration list, but that other grievances filed earlier or concerning terminations or suspensions had priority. *Id.* In early October 2017, Plaintiff followed up twice regarding his grievance. *Id.* ¶¶ 31–32. In response, the

---

[2] On a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint, . . . where the complaint 'relies heavily upon [the document's] terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). Plaintiff did not attach a copy of the CBA to his Amended Complaint, though he references it at least once. Am. Compl. ¶ 15. In connection with their motions to dismiss, Pratt submitted excerpts from the CBA between the Union and Pratt effective between December 9, 2013, and December 4, 2016, ECF No. 19-1, Ex. A, and the Union submitted what appears to be a photocopy of the full CBA between the Union and Pratt effective the same dates, ECF No. 15-4. Because Count Three of Plaintiff's amended complaint concerns Pratt's alleged breach of the CBA and the Union's alleged breach of its duty of fair representation in connection with grievance procedures set forth in the CBA, the Court deems the CBA to be integral to the amended complaint and will consider it in deciding the present motions. *See Garnes v. Prichard Industries, Inc.*, No. 20 Civ. 3843 (PAE) (SLC), 2023 WL 3980693, at *1, n.1 (S.D.N.Y. May 23, 2023) (considering CBAs in deciding motion to dismiss Section 301 claim because, among other reasons, they were integral to the complaint); *see also Reid v. United Brotherhood of Teamsters North Atl. Dist. Local 804*, No. 16-cv-8021 (LTS), 2017 WL 2628878, at *1, n.2 (S.D.N.Y. June 16, 2017) (same). Both Defendants' versions of Article 7 are identical.

Union informed Plaintiff that his case was number 162 on the list and that there was no date set for arbitration.  *Id.* ¶¶ 33, 35.  Dissatisfied with the Union's communication, in late 2017, Plaintiff filed a charge against the Union with the National Labor Relations Board ("NLRB").  *Id.* ¶ 36.  On February 16, 2018, Plaintiff withdrew his NLRB charge after the NLRB reassured Plaintiff that his case was still on the waiting list and that the wait was normal.  *Id.* ¶ 37.  Plaintiff occasionally inquired about his grievance with the Union during March, April, and May of 2021.  *Id.* ¶¶ 38–42.  In an email on May 11, 2021, Plaintiff stated that if the Union did not respond, he would file suit for breach of fair representation.  *Id.* ¶ 42.

In October 2021, Plaintiff again filed a charge against the Union with the NLRB over the overtime grievance.  *Id.* ¶ 44.  On February 4, 2022, the Union informed Plaintiff that his grievance had been withdrawn.  *Id.*

In July of 2022, Plaintiff initiated the present action.  ECF No. 1.  Plaintiff asserts three claims:  unpaid overtime, in violation of the FLSA, 29 U.S.C. § 216(b) *et seq.* (Count One), Am. Compl. ¶¶ 48–49; unpaid overtime, in violation of the CMWA, Conn. Gen. Stat. § 31-76(c) (Count Two), *id.* ¶¶ 50–51; and breach of the CBA by Pratt and breach of the duty of fair representation by the Union, in violation of Section 301 of the LMRA, 29 U.S.C.A § 185 (Count Three), *id.* ¶¶ 52–54.[3]

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed

---

[3] The Amended Complaint does not make clear whether all claims are brought against both Defendants. The Court will assume that Plaintiff intended to assert all Counts against all Defendants, in part because of the special solicitude afforded to pro se litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases), and in part because all parties treat all of the counts of the Amended Complaint as applying to both Defendants.

allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court bears in mind that a *pro se* litigant's filings "must be construed liberally to raise the strongest arguments they suggest." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (cleaned up).

## III.   DISCUSSION

The Court dismisses all three counts as asserted against both Defendants for the reasons discussed below.

A. FLSA Claim (Count One)

Plaintiff first claims that Defendants violated the FLSA by failing to pay him overtime wages. "The FLSA was designed to protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)). As part of these protections, the FLSA provides that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id.* § 207(a)(1). Plaintiff contends that Pratt and the Union violated the FLSA, by failing to pay him overtime for the four-hour difference between the thirty-six-hour AWW1 Shift and the forty-hour First Shift. Am. Compl. ¶¶ 48–49. The Court dismisses Count One.

To begin, insofar as Plaintiff brings an FLSA claim against the Union, Plaintiff fails to state a claim for relief because the Union is not Plaintiff's employer under the FLSA. The FLSA defines "employer" as someone "acting directly or indirectly in the interest of an employer in relation to an employee . . . *but does not include any labor organization* (other than when acting as an employer) . . . ." 29 U.S.C. § 203(d) (emphasis added). A plaintiff thus generally cannot bring an FLSA claim against a labor union.

Even if a labor organization is normally exempt, it may be liable on the occasions it acts as an employer. *See id.* Plaintiff cannot establish this exception, however, because it is clear the Union was not his employer. The Second Circuit applies a four-factor test to determine whether an "employer possessed the power to control the workers in question with an eye to the 'economic

reality' presented by the facts of each case." *Herman v. RSR Sec. Sevrices Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961) (internal citations omitted). The relevant factors include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)). Because the Amended Complaint alleges that Pratt, and not the Union, had the power to hire, fire, and control the schedules and conditions of employment and the rate of pay, Plaintiff has not plausibly alleged that the Union was his employer, and therefore cannot assert an FLSA claim against it.

Plaintiff's remaining FLSA claim against Pratt must also be dismissed. Assuming, without deciding, that Pratt qualifies as Plaintiff's employer under the FLSA, Plaintiff's FLSA claim against Pratt cannot proceed because it was untimely filed. The FLSA provides that any action by an employee against an employer for recovery for overtime compensation "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An action for overtime repayment under the FLSA accrues when an employer "fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b). "[A] claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (cleaned up).

In his Amended Complaint, Plaintiff admits that he knew Pratt owed him overtime sometime in December 2015. Am. Compl. ¶¶ 16, 19. Based on this information, Plaintiff filed his

first grievance against Pratt that same month. *Id.* ¶ 21. Since Plaintiff knew of the alleged wrongs giving rise to this cause of action since December of 2015, Plaintiff's claims under the FLSA should have been brought no later than December of 2018, assuming the more-generous three-year statute of limitations applies. And even if the Court were to assume that each time Pratt underpaid Plaintiff, a new cause of action accrued, Plaintiff's claim would still be untimely because Pratt terminated Plaintiff's employment in April of 2016, *id.* ¶ 23, more than three years prior to the commencement of this suit on July 25, 2022.

Even if Plaintiff argued that equitable tolling preserved his claims (he does not so argue), this argument offers no relief. To benefit from equitable tolling, a plaintiff must "establish that extraordinary circumstances prevented the plaintiff from filing a claim on time, and that the plaintiff acted with reasonable diligence throughout the period the plaintiff seeks to toll." *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (cleaned up). "An extraordinary circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action, or if the defendant concealed from the plaintiff the existence of the cause of action." *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 697 (D. Conn. 2008) (citations omitted); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). No extraordinary circumstances appear to have barred Plaintiff from learning of his cause of action and filing a claim within the three-year statute of limitations. Indeed, Plaintiff learned of his cause of action in December of 2015, Am. Compl. ¶ 16, and acknowledged as much when he promptly filed a grievance in January 2016, *id.* ¶ 21.

Yet, Plaintiff did not file the present action until July 25, 2022, more than three years after the latest time at which he could have filed suit.[4]

Moreover, even if Plaintiff's FLSA claim was timely filed, the allegations of the amended complaint fail to state a claim for relief.  As noted above, the FLSA provides that an employer must pay an employee time-and-a-half per hour for hours worked *in excess of* forty hours per week. 29 U.S.C. § 207(a)(1).  That is, to state a claim for relief for unpaid overtime under the FLSA, a plaintiff "must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours."  *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  Plaintiff's allegations preclude this argument. As Plaintiff explains:  "[A]t the time when I was terminated, I was working first shift on Mondays to Fridays, from 7 am to 3:30 pm (5X8= 40 hours)."  Am. Compl. ¶ 9.  Because Plaintiff does not allege that he worked more than forty hours per week, Plaintiff cannot state a claim for relief under the FLSA.

For these reasons, Count One is dismissed against both Defendants.

## B.  CMWA Claim (Count Two)

Like the FLSA, the CMWA protects workers by setting an overtime wage requirement. Conn. Gen. Stat. § 31-76c.  Plaintiff claims that Pratt and the Union violated the CMWA by failing to pay him the overtime he was entitled.  For the following reasons, the Court holds that Plaintiff has failed to state a claim for relief under the CMWA.

Initially, as with Plaintiff's FLSA claim, the Union cannot be liable for an alleged CMWA violation because it is not Plaintiff's employer.  *See Pau v. Chen*, No. 3:14CV841(JBA), 2015 WL

---

[4] That Plaintiff did not receive a response to his overtime-related grievance from the Union until February of 2022 does not excuse his belated filing.  He has not pointed to any authority tolling the deadline for filing an FLSA claim until a union grievance is resolved, and the Court has found none.

6386508, at *6 (D. Conn. Oct. 21, 2015) ("To be liable under the FLSA or the CMWA, one must be an 'employer.'").  The CMWA uses a "somewhat different definition of 'employer' than the FLSA." *Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015).  Under the CMWA, an employer includes "any owner or any person . . . acting directly as, or on behalf of, or in the interest of an employer in relation to employees." Conn. Gen. Stat. § 31-58(d).  The Connecticut Supreme Court has held that the term "employer" under the CMWA "encompasses an individual who possess the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler v. Hartford Tech., Inst., Inc.*, 243 Conn. 454, 462 (1997).  Plaintiff's amended complaint does not allege that the Union possesses any authority or control to set the hours of employment or pay wages, much less the ultimate authority to do so.  Therefore, to the extent Plaintiff's CMWA claim is asserted against the Union, it must be dismissed.

Assuming without deciding that Pratt qualifies as Plaintiff's employer under the CMWA, Plaintiff's remaining CMWA claim against Pratt must also be dismissed, like his FLSA claim, as untimely.  The CMWA is subject to a two-year statute of limitations.  *See* Conn. Gen. Stat. § 52-596 ("No action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues . . . .").  That period may be tolled if a person files a complaint with the Labor Commissioner.  *Id.*  A claim accrues under the CMWA "when an employer refuses to compensate an employee according to the terms of an express or implied employment contract." *Warzecha v. Nutmeg Companies, Inc.*, 48 F. Supp. 2d 151, 158 (D. Conn. 1999) (citing *Burns v. Koellmer*, 11 Conn. App. 375, 388 (1987)).

As discussed above, Plaintiff's claims are time-barred under the longer FLSA three-year statute of limitations.  For similar reasons, Plaintiff's CMWA claim is time-barred under the

CMWA's shorter, two-year window.  He has not alleged that he filed a complaint with the Labor Commissioner that could have tolled his claims; nor do the circumstances suggest equitable tolling would be appropriate.  The claim must therefore be dismissed as untimely.

Even if Count Two was timely, Plaintiff fails to state a claim for relief.  Just like the FLSA, a plaintiff asserting a CMWA claim must allege he worked "in excess" of "forty [work] hours." Conn. Gen. Stat. § 31-76c.  Because Plaintiff does not allege that Pratt did not compensate him for work in excess of forty hours a week, Plaintiff cannot state a claim for relief under the CMWA.

For these reasons, Count One is dismissed against both Defendants.

C.  LMRA Claim (Count Three)

Finally, the Court turns to Count Three, which the amended complaint references as alleging a violation of Section 301 of the LMRA.  Count Three refers only to the Union breaching its duty of fair representation, Am. Compl. ¶ 53, and does not reference Pratt.  Although the amended complaint states that "both respondents" violated Section 301, Am. Compl. at 1, Plaintiff has not argued in his opposition to Pratt's motion to dismiss that he intended Count Three to state a claim directly against Pratt.  Interpreting the amended complaint liberally, however, the Court will construe Count Three as asserting four claims:  (1) two § 301 claims against Pratt for breaching the CBA; and (2) two so-called "hybrid" Section 301 claim against both Pratt and the Union.

*1. Section 301 Claims Against Pratt; Exhaustion*

Plaintiff articulates two instances of allegedly wrongful conduct by Pratt:  (1) not issuing a certificate of shift change, *id.* ¶¶ 14, 16, 18, and (2) not "post[ing]" Plaintiff's new position, *id.* ¶ 15.  To the extent these allegations are interpreted as alleging that Pratt violated the CBA, they are governed by Section 301 of the LMRA.  *Garnes*, 2023 WL 3980693, at *12 (recognizing that

breach of contract claims that arise out of a collective bargaining agreement are governed by Section 301).  Before a union-represented employee may sue his employer for breach of a CBA, he ordinarily must "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).  Exhaustion is required because it is "a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  Where an employee has not first exhausted his or her grievance under the CBA, a court must dismiss the employee's claims.  *DelCostello*, 462 U.S. at 164.

Because there are no allegations that Plaintiff ever attempted to file grievances for Pratt's failures to issue a shift change or posting Plaintiff's new position, these claims fail for lack of exhaustion of the grievance process.

### 2. Hybrid Section 301/Fair Representation Claim

Ordinarily, when a union member plaintiff exhausts grievance and arbitration remedies provided by the CBA, "that would end the matter, since such a plaintiff would either win in the arbitration or if she lost, . . . would be bound by the result in that forum."  *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990).  But if a Plaintiff can demonstrate that the unsuccessful result in the arbitral forum was "due to the Union's wrongful conduct, that is, a breach of its duty to represent plaintiff fairly, then the judicial forum will still be open."  *Id.*  In such cases, exhaustion is excused, and "a plaintiff may bring what the Supreme Court in *DelCostello* labeled as a 'hybrid § 301/fair representation claim' (or a 'hybrid Section 301' claim) against the employer for breach of the collective bargaining agreement under section 301 of the LMRA and against the union for 'breach of the union's duty of fair representation, which is implied under the scheme of the

National Labor Relations Act.'"  *Garnes*, 2023 WL 3980693, at *12 (quoting *DelCostello*, 462 U.S. at 164); *see also Carrion v. Enterprise Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 33 (2d Cir. 2000).

A hybrid Section 301/fair representation claim is one in which "[a]n employee's duty-of-fair-representation claim against his labor union is derivative of – that is, 'inextricably interdependent' with – his claim against his employer under section 301 of the LMRA."  *Jusino v. Federation of Catholic Teachers, Inc.*, 54 F.4th 95, 101 (2d Cir. 2022) (quoting *DelCostello*, 462 U.S. at 164).  The claim against the employer "rests on § 301, since the employee is alleging a breach of the collective bargaining agreement."  *DelCostello*, 462 U.S. at 164.  The claim against the union "is one for breach of the union's duty of fair representation . . . ."  *Id.*  Accordingly, a hybrid claim may be brought against either the union, the employer, or both.  *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001).  Whomever the employee chooses to sue, "the case he must prove is the same . . . ."  *DelCostello*, 462 U.S. at 165.  The employee must prove "both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members."  *White*, 237 F.3d at 178.

Defendants argue, and the Court agrees, that the statute of limitations bars the majority of Plaintiff's hybrid Section 301/fair representation claim.  The Court does find that Plaintiff's claim for breach of duty by the Union for withdrawing his wage grievance is timely.  As described further below, however, this one timely claim nonetheless fails to state a claim upon which relief can be granted.

*a. Timeliness*

A hybrid Section 301/fair representation claim is subject to a six-month statute of limitations, as borrowed from section 10(b) of the National Labor Relations Act. *DelCostello*, 462 U.S. at 169; *Carrion*, 227 F.3d at 32. This statute of limitations begins to accrue "when the employee knew or should have known of the breach of the duty for fair representation." *Whitehurst v. 1199SEIU United Healthcare Workers East*¸ 928 F.3d 201, 205 (2d Cir. 2019) (quoting *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997)). "Where a union refuses or neglects to assist a union member," "decides to stop assisting a member," or "acts against the interests of a member," an employee knows about the breach "at the time [the member] learns of the union action or inaction about which [the member] complains." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989).

The statute of limitations may be equitably tolled in certain circumstances: "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period," "where [the] plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant," or where a plaintiff's "medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003); *accord Serrano v. USA United Transit, Inc.*, 402 Fed. Appx. 574, 576 (2d Cir. 2010) (summary order) (citing *Zerilli-Edelglass* in the context of deciding whether a hybrid Section 301/fair representation claim was timely filed). In assessing whether equitable tolling is applicable, the Court must consider whether the plaintiff has: (1) exercised "reasonable diligence during the time period" and "(2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerili-Edelglass*, 33 F.3d at 80–81.

14

Reading the Amended Complaint with the "special solicitude" owed to a *pro se* plaintiff, the Court identifies two hybrid Section 301/fair representation claims: (1) his claim related to the 2016 arbitration concerning his termination, *id.* ¶¶ 26, 28, and (2) his overtime grievance, *id.* ¶¶ 29, 36, 38–44. The 2016 arbitration termination claim is a hybrid claim because the Court reads the amended complaint as alleging that Pratt fired him in violation of the CBA after he filed his overtime grievance, *see* Am. Compl. ¶ 22, and that the Union breached the duty for fair representation by intentionally preventing Plaintiff from defending himself during the termination arbitration, *id.* ¶¶ 26–28. The second allegation is a hybrid claim because Plaintiff alleges Pratt withheld overtime wages in violation of the CBA and that the Union intentionally delayed and ignored Plaintiff's overtime grievance. The six-month statute of limitations applies to both allegations.

Turning to the first hybrid allegation, Plaintiff's claim is time-barred. At the very latest, Plaintiff's claim began to accrue starting on January 26, 2017, when the arbitrator rejected Plaintiff's grievance related to his 2016 termination. *Id.* ¶¶ 23, 25–28. The instant suit, filed on July 25, 2022, thus falls well outside of the six-month limitations window. *Id.* ¶ 23. Further, Plaintiff's claims are not subject to equitable tolling because, as discussed in the context of the FLSA and CMWA, there are no allegations that suggest Plaintiff actively pursued judicial remedies but filed a defective pleading within the six-month limitations period; that Pratt misled Plaintiff; that Plaintiff suffered from any impairment that prevented him from proceeding in a timely fashion; or that extraordinary circumstances prevented Plaintiff from filing a claim on time, and that Plaintiff acted with reasonable diligence throughout the period he seeks to toll.

There are two possible start dates to the statute of limitations governing Plaintiff's second allegation, related to the Union's treatment of his grievance for overtime pay. Only one of these

start dates would make Plaintiff's hybrid claim timely.  Although this is a close question, the Court concludes that the second hybrid claim appears timely filed.

First, on May 11, 2021, Plaintiff emailed the Union stating that "ignoring [his] request for an answer" to his grievance constitutes a "breach[ ] of the duty of fair representation." *Id.* ¶ 42.  If Plaintiff is correct that the Union's silence constitutes a breach of the duty for fair representation, then the statute of limitations on this hybrid claim ran on November 11, 2021.  *See Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) ("Once a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs cannot be treated as a continuing violation that precludes the running of the limitations period.") (cleaned up).  The second possible date is February 4, 2022, when the Union sent Plaintiff a letter informing Plaintiff that the Union had withdrawn his grievance.  Am. Compl ¶ 44.  Using this second date, the statute of limitations on Plaintiff's hybrid claim ran August 4, 2022, making timely the instant hybrid claim, which was filed on July 25, 2022.

A union may breach the duty for fair representation by "ignoring or perfunctorily pressing a meritorious claim . . . ."  *Samuels v. Air Transport Local 504*, 992 F.2d 12, 16 (2d Cir. 1993) (cleaned up); *Thomas v. Little Flower for Rehabilitation & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011).  Thus, it is possible that the breach of fair representation claim accrued when the union failed to respond to Plaintiff's May 11, 2021, email.  Nonetheless, drawing all factual inferences in favor of the Plaintiff, and heeding the Second Circuit's guidance to interpret a *pro se* party's submission to raise the strongest arguments it suggests, *Triestman v. Fed. Bureau of Prisons*, 470 F3d 471, 474 (2d Cir. 2006), the Court will assume that Plaintiff did not have actual or constructive notice of the Union's breach until February 4, 2022, when the Union sent Plaintiff

a letter informing Plaintiff that his grievance had been withdrawn.  This renders Plaintiff's second hybrid claim timely.

### b.  Merits

As noted above, to state a hybrid Section 301/fair representation claim, a plaintiff bears the burden of proving two elements:  (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing a grievance against the employer.  *White*, 237 F.3d at 178.  Here, Plaintiff does not plausibly allege that Pratt breached the CBA or that the Union breached its duty of fair representation.

### i.  Plaintiff does not allege Pratt breached the CBA

Plaintiff has not plausibly alleged that Pratt breached the CBA by not paying him overtime. Am. Compl. ¶ 19.

In interpreting the CBA, "traditional rules of contract interpretation apply as long as they are consistent with federal labor policies."  *Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000); *accord United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. And Service Workers Int'l Union, AFL–CIO/CLC v. Cookson America, Inc.*, 710 F.3d 470, 473 (2d Cir. 2013). Where the CBA is unambiguous, the terms "must be given effect as written."  *Aeronautical Indus. Dist. Lodge 91*, 230 F.3d at 576.

The unambiguous language of the CBA forecloses Plaintiff's claim that Pratt breached the CBA by not paying him overtime for working forty hours a week.  Article 12 of the CBA states that Pratt must pay overtime in limited circumstances:

Overtime rates will be paid as follows for employees assigned to a traditional Monday through Friday, eight (8) hour day workweek schedule:

(a)  Time and one-half will be paid for:

1. All time worked in excess of eight (8) hours in any one day, and for employees who worked in excess of a six and one-half hour scheduled shift.
2. All time worked in excess of forty (40) hours in one workweek for which overtime has not already been earned.
3. All work performed on a Saturday, except for the first eight (8) hours of any scheduled shift, which begins on Friday and continues into Saturday.
4. All work performed outside of regularly scheduled shift hours.

(b) Double time will be paid for:
1. All work performed on Sunday, except for the first eight (8) hours of any scheduled shift, which begins on Saturday and continues into Sunday.
2. All work performed on each of the holidays listed in Article 14.

ECF No. 19-1 at 16–17.  These provisions are unambiguous:  only employees who are assigned to a traditional Monday through Friday eight-hour day work week who work more than eight hours a day, or more than forty hours a week, or on weekends outside their regular shift, are eligible for overtime.  Once Plaintiff started the First Shift in 2014, these provisions of the CBA limited his eligibility for overtime accordingly.[5]  Am. Compl. ¶¶ 9, 12–13.  Plaintiff's allegations cannot plausibly allege a violation of Article 12 of the CBA, as he concedes he did not work in excess of eight hours a day, or forty hours a week, or on weekends outside of his regular shift.  *See id.* ¶ 9 ("[A]t the time when I was terminated, I was working first shift on Mondays to Fridays, from 7 am to 3:30 pm (5X8= 40 hours)."  Plaintiff does not point to any provision of the CBA, and the Court has been unable to find one, that would entitle Plaintiff to overtime in this situation.

Plaintiff therefore has not established the first element of his hybrid claim, relating to Pratt's alleged breach of the CBA.

---

[5] Although Plaintiff alleges that Pratt never formally changed his shift by issuing a certificate of shift change, that does not alter the fact that he was, in fact, working forty hours per week on the First Shift.

*ii. Breach of the duty of fair representation*

Because Plaintiff has failed to allege the first element of his hybrid claim, his claim fails in its entirety.  *See White*, 237 F.3d at 178–79.  In the interest of completeness, however, the Court will evaluate Plaintiff's allegations regarding the second element:  whether the Union breached its duty of fair representation.

In assessing this issue, the Court must determine whether the Union's conduct toward Plaintiff was "arbitrary, discriminatory, or in bad faith."  *Sanozky v. Int'l Ass'n of Machinists and Aerospace* Workers, 415 F.3d 279, 282 (2d Cir. 2005) (quoting *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998)).  "[A] union's actions are arbitrary only if, in the light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  *Sanozky*, 415 F.3d at 282–83 (*quoting Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).  If a plaintiff establishes that his union acted in an arbitrary, discriminatory, or bad faith manner, he must "also prove that there was 'a causal connection between the union's wrongful conduct and their injuries.'"  *White*, 237 F.3d at 179 (quoting *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

The Court's review of Plaintiff's allegation is "highly deferential" because of "the wide latitude that [unions] need for the effective performance of their bargaining responsibilities."  *Air Line Pilots Ass'n Int'l*, 499 U.S. at 78.  A union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer."  *Chauffeurs Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 567–68 (1990).  This discretion is "essential to the proper functioning of the collective-bargaining system."  *International Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 51 (1979).

Even under this deferential standard, viewing all factual allegations in the light most favorable to Plaintiff, he has plausibly alleged the Union's decision to withdraw his grievance was arbitrary, discriminatory, or in bad faith.  Plaintiff alleges that the Union withdrew his grievance in retaliation for prior complaints he filed against union leaders.  Am. Compl. ¶¶ 26, 43.  Plaintiff also alleges that the Union repeatedly ignored his email requests to address his grievance, and that the Union only responded under threat of investigation by the NLRB.  *Id.* ¶¶ 30–36, 38–44.  Given the Plaintiff's contentious relationship with union officials, combined with the Union's responsiveness only in the face of legal action, Plaintiff has plausibly alleged that the Union acted in bad faith.

The Court cannot find, however, that Plaintiff has plausibly alleged a causal connection between the Union's conduct and his alleged injuries.  *See White*, 237 F.3d at 179.  The Union contends that it withdrew Plaintiff's grievance because it lacked merit.  ECF No. 34 at 3 n.3.  As discussed above, the plain terms of the CBA would not have entitled Plaintiff to overtime wages.  Thus, even had the Union pursued Plaintiff's grievance to completion, he would not have been successful in his quest to recover overtime wages.  Plaintiff therefore cannot demonstrate that the Union's failure to follow through with his grievance caused the injury of which he now complains because he was not, ultimately, owed any overtime wages.

## IV.    CONCLUSION

For the reasons described above, Defendants' motions to dismiss are GRANTED, and Plaintiff's claims are dismissed in their entirety.  Because Plaintiff cannot, on these facts, allege claims that would survive a motion to dismiss, amendment would be futile, and leave to amend will not be permitted.  The Clerk is therefore directed to enter judgment in favor of Defendants

and close this case.

                     */s/ Sarala V. Nagala*
                     SARALA V. NAGALA
                     UNITED STATES DISTRICT JUDGE